IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LONNELL REGINALD WIDEMAN, #A0180563,<br><br>       Petitioner,<br><br>  vs.<br><br>WARDEN THOMAS,<br><br>       Respondent. | CIVIL NO. 14-00073 DKW/RLP<br><br>FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS |

FINDINGS AND RECOMMENDATION TO DENY
PETITION FOR WRIT OF HABEAS CORPUS[1]

Before the court is *pro se* Petitioner Lonnell Reginald Wideman's ("Wideman") petition for writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"), filed on February 10, 2014. ECF No. 1. Wideman, a Hawaii prisoner incarcerated at the Saguaro Correctional Center in Eloy, Arizona, alleges that the Hawaii Paroling Authority ("HPA") unlawfully revoked his parole in May 2012. Respondent SCC Warden Todd Thomas ("Respondent") filed his Answer on March 14, 2014. ECF No. 10. Wideman filed his Reply on March 24, 2014. ECF No. 11. As discussed below, the Court FINDS and RECOMMENDS that the Petition be DENIED.

---

[1] Within fourteen (14) days after a party is served with a copy of the Findings and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1)(B), file written objections in the United States District Court. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the Findings and Recommendation. If no objections are filed, no appellate review will be allowed.

BACKGROUND

**A.   Factual Background**

On February 25, 1988, after a jury-waived trial held in Cr. No. 85-1261, Judge Edwin H. Honda sentenced Wideman to life imprisonment with possibility of parole for charges of attempted murder, burglary in the first degree, and kidnapping. See Resp. App. B & C, PageID # 75-76. Wideman's original jury conviction was overturned due to court error during the trial, but he was convicted after a new trial, which resulted in the above sentence. See State v. Wideman, 69 Haw. 268, 739 P.2d 931 (1987); Resp. App. A, PageID # 72-74.

Wideman was paroled by HPA in 1997, but, on November 26, 2007, he had his parole revoked for the balance of his maximum life sentence. See Resp. App. D, PageID # 97. Following Wideman's guilty plea, the HPA found Wideman to have violated the terms and conditions of his parole by traveling to the Philippines without permission, failing to submit proper documentation for travel, and failing to notify his probation officer of his whereabouts. Id. A hearing for further parole consideration was scheduled for November 2009. Id.

In January 2010, Wideman was paroled by HPA for the second time. See Resp. App. D, PageID # 99-105. The Order of Parole includes the following provision:

> While on parole and until expiration of his/her maximum parole term or granted a final

> discharge, he/she shall continue to be in the
> legal custody and control of the Hawaii
> Paroling Authority. Should he/she at any time
> violate any of the terms or conditions of
> his/her parole, he/she shall be subject to
> summary return to imprisonment. The prisoner
> may be required to serve the remainder of
> his/her term.

Id. at PageID # 99. On January 22, 2010, Wideman signed the Terms and Conditions of Parole, which contained a provision stating, "You shall immediately notify your parole officer of any contacts you have with any law enforcement office pursuant to an authorized investigation." Id. at PageID # 101.

On May 18, 2012, a parole retake warrant issued, and Wideman was arrested on the warrant and returned to custody. Id. at PageID # 93. On May 21, 2012, Wideman received a Notice of Right to Pre-Revocation Hearing, which informed him of the allegations against him. Id. at PageID # 107-08. Specifically, Wideman allegedly failed to immediately notify his parole officer of being in contact with a law enforcement officer on three occasions: twice after being in contact with the Honolulu Police Department regarding the disappearance of his wife on May 15 and 17, 2012, and once after being served with a Petition and Order of Protection on July 26, 2011. Id. at PageID # 107. Wideman signed this document, and immediately above his signature are checked boxes indicating that he (1) waived his right to a pre-revocation hearing and (2) did not wish to have a pre-revocation hearing. Id. at PageID # 108.

3

On July 16, 2012, the HPA held a parole violation hearing. Id. at PageID # 119. Wideman appeared at the hearing with his counsel, Deputy Public Defender Phyllis Hironaka. Id. at PageID # 124. They "fought [Wideman's] charged violations by requiring the parole officers to put on their evidence, and also established our evidence (through [Wideman's] testimony)." Id. The next day, the HPA issued its decision, which found Wideman guilty of all three parole violations charged, revoked Wideman's parole for the balance of his maximum life sentence, and scheduled a hearing for further parole consideration in May 2019. Id. at PageID # 119.

**B.  Procedural History**

On August 30, 2012, Wideman filed a Petition in the Circuit Court of the First Circuit of the State of Hawaii ("Circuit Court") pursuant to Rule 40 of the Hawaii Rules of Penal Procedure. See Resp. App. E, PageID # 127-144. Wideman's claims are summarized as follows: (1) unlawful revocation of parole; (2) ineffective assistance of counsel; (3) denial of HPA chronological records; (4) illegal seven-year parole "sentence"; and (5) unfair hearing. Id. at PageID # 128-29. On January 14, 2013, the Circuit Court issued its order denying and dismissing Wideman's Petition. See Resp. App. G, at PageID # 205-07. The court found that "the petition is patently frivolous and its claims are without trace of support either in the record or from

4

other evidence submitted by Petitioner, and the petition's allegations and arguments are without merit." Id. at PageID # 205-06.

On February 4 and 25, 2013, Wideman filed two separate appeals of the Circuit Court's decision to the Intermediate Court of Appeals of the State of Hawaii ("ICA"), which were consolidated into a single appeal by the ICA on March 8, 2013. See Resp. App. J, PageID # 227-29. On October 23, 2013, the ICA issued its summary disposition order which affirmed the Circuit Court's dismissal of Wideman's Petition. See Resp. App. N, PageID # 301-02. The ICA found that Wideman's appeal was without merit, stating:

> The record in this case shows Wideman failed to report contact with law enforcement in violation of a condition of his parole. The record also indicates his parole revocation proceedings were pursuant to the applicable statutes and rules that govern such proceedings. In addition, there is nothing in the record to suggest his counsel was ineffective.

Id. at PageID # 302. The instant Petition followed.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, authorizes the grant of a state prisoner's petition for a writ of habeas corpus under 28 U.S.C. § 2254(d) when the relevant state court decision was "(1) 'contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Murray v. Schriro, 745 F.3d 984, 996 (9th Cir. 2014) (quoting 28 U.S.C. § 2254(d)).

For the purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Lockyer v. Andrade, 538 U.S. 63, 71 (2003). Although circuit court precedent may be helpful to determine whether a particular point in issue is clearly established by Supreme Court precedent, "circuit precedent may [not] be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that the Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450-51 (2013).

A state court decision is "contrary to" clearly established federal law in two circumstances. First, a state court decision is contrary to federal law if "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law," or "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court." Murray, 745 F.3d at 997 (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)) (internal alterations omitted). Second, a

6

state court decision is an "unreasonable application" of Supreme Court precedent if the "the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. (quoting Williams, 529 U.S. at 407) (internal alterations omitted). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. Indeed, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, the standard imposed by the AEDPA is "highly deferential . . . [and] demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

7

state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87.

Under the AEDPA, the court looks to the last reasoned state court decision. Murray, 745 F.3d at 996. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. This presumption may be overcome by a showing that "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas relief is available under § 2254(d). Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision was objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned decision is available, the habeas petitioner still has

the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

DISCUSSION

**A.   Grounds One, Four, and Seven: Unlawful Parole Revocation**

Wideman raises three grounds in his Petition that essentially contest the substantive revocation of his parole. In Ground One, Wideman claims that his parole was unlawfully revoked because he "was not arrested or charged during [the three unreported] police contacts, but was nonetheless required to notify the HPA of any such contact as a condition of his parole." See Petition, PageID # 5. In Ground Four, Wideman alleges that he was unlawfully "sentenced to a seven year parole revocation term" despite "never [being] arrested or charged with any crime." Id. at PageID # 10. In Ground Seven, Wideman asserts that because he was not arrested or charged with any crime, "[t]here are mitigating circumstances that did not warrant [his] parole to be revoked." Id. at PageID # 13.

Insofar as Wideman is claiming a right to parole, it is clear that he has no such right. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Although a state parole statute may create an "expectancy of release" on parole that "is entitled to some measure of

9

constitutional protection," see id. at 12, "it is well-established that Hawaii parole statutes do not create a liberty interest in parole." Regan v. Hawaii, Civ. No. 07-00029 JMS-BMK, 2007 WL 4440956, at *2 (D. Haw. Dec. 19, 2007) (citing Mujahid v. Apao, 795 F. Supp. 1020 (D. Haw. 1992)). Rather, Hawaii parole statutes, such as Haw. Rev. Stat. § 353-68 and § 353-69, "use discretionary language and do not create a presumption that parole release will be granted." Id.

The provisions of Hawaii law specifically dealing with parole *revocation* likewise do not create a protectable entitlement to parole for a prisoner whose parole has been revoked. The law provides only that "[i]f a parolee's parole is revoked, the term of further imprisonment upon such recommitment and of any subsequent reparole or recommitment under the same sentence shall be fixed by the authority but shall not exceed in aggregate length the unserved balance of the maximum term of imprisonment." Haw. Rev. Stat. § 706-670(8). This statute does not endow Wideman with a protectable interest in serving no more than the term initially identified by the HPA. See Moor v. Palmer, 603 F.3d 658, 662 (9th Cir. 2010) (analyzing similar Nevada parole revocation statute and rejecting prisoner's due process claim). Similarly, Wideman was not unlawfully sentenced to a "seven year parole revocation term." Indeed, "[p]arole revocation is not a criminal penalty for violating the terms of

parole[,] it is simply a continuation of the punishment for the original crime."  Id. at 660 (citing United States v. Soto-Olivas, 44 F.3d 788, 789 (9th Cir. 1995)).

Moreover, to the extent Wideman challenges the condition of parole itself, his argument is without merit.  The HPA may condition release on parole on "any special terms and conditions the [HPA] finds necessary to protect the welfare and safety of society and guard against future law violations."  Haw. Admin. R. § 23-700-35(a).  See also Haw. Rev. Stat. § 706-670(2) ("The authority, as a condition of parole may impose reasonable conditions on the prisoner as provided under section 706-624."). The HPA is expressly permitted to impose as a parole condition that parolees notify their parole officers "promptly if arrested *or questioned* by a law enforcement officer."  Haw. Rev. Stat. § 706-624(1)(e) (emphasis added).  Here, Wideman was required, as a condition of his parole, to "*immediately* notify [his] parole officer of *any* contacts [he had] with *any* law enforcement office pursuant to an authorized investigation."  Resp. App. D., PageID # 101 (emphases added).  Although Wideman may believe that his parole was unfairly revoked because he was never actually arrested or charged in connection with his unreported police contacts, there is no dispute that (1) HPA was authorized to impose the condition that Wideman immediately report *any* police contact, (2) Wideman failed to report three separate contacts,

11

and (3) HPA was entitled to revoke Wideman's parole on that basis. For the foregoing reasons, the Court FINDS that Wideman's argument that his parole was unlawfully revoked is without merit and RECOMMENDS that Grounds One, Four, and Seven be DENIED.

**B.    Ground Two: Waiver of Preliminary Hearing**

In Ground Two of his Petition, Wideman claims that he did not knowingly and willingly waive his right to a preliminary parole revocation hearing. Although Wideman admits that he signed the Notice of Right to Pre-Revocation Hearing form, he states that he thought he was signing to acknowledge receipt of the charges, as he was served with the Notice of Hearing, Rights for Revocation Hearing and Request for Legal Counsel form at the same time. Wideman further contends that the checked boxes indicating that he (1) waived his right to a pre-revocation hearing and (2) did not wish to have a pre-revocation hearing on the Notice of Right to Pre-Revocation Hearing form were not his handwriting.

Wideman fails to present evidence demonstrating that there was no reasonable basis for the state court to deny relief on this claim. Here, Wideman admits signing the Notice of Right to Pre-Revocation form, which is titled as such in bolded, all capital letters. Immediately above his signature are the checked boxes regarding his waiver of his right to a pre-revocation hearing. There is no indication that this waiver was not made

knowingly and intelligently.  To the contrary, the Court's review of Wideman's Petition and state court submissions related to his appeal show that he is a thoughtful and detailed researcher and writer and someone who would likely read all forms carefully before signing them.  This is especially true for a parolee like Wideman who, having been granted parole twice and violating it once before being revoked a second time, has experience and knowledge of the parole revocation process and his rights thereunder.

In addition, even if Wideman did not waive his right to a preliminary revocation hearing, the lack of a hearing was harmless.  The purpose of a preliminary hearing is "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed the acts that would constitute a violation of parole conditions."  Morrissey v. Brewer, 408 U.S. 471, 485 (1972).  Here, Wideman was afforded a full evidentiary revocation hearing, with counsel present, before the revocation of his parole became final.  During this hearing, Wideman admitted the facts necessary for the HPA to find that a parole violation had occurred, i.e., that he failed to immediately report contact with a law enforcement agency.  Although Wideman contends that his parole should not have been revoked because he was never arrested or charged in connection with the unreported police contacts, he does not dispute that the

police contacts occurred and that he failed to immediately report them. Thus, Wideman cannot claim that the lack of a preliminary revocation hearing bears any relation to his present confinement. It makes little sense to undo the revocation of parole due to the lack of a preliminary hearing when Wideman willingly supplied all the justifications necessary for the HPA to render its decision. See Barton v. Malley, 626 F.2d 151, 159 (10th Cir. 1980) ("[Petitioner's] present incarceration stems from a decision made after a final revocation hearing, adequate in all respects. Any denial of his right to a preliminary revocation hearing no longer bears on his incarceration. The extreme remedy of release is not justified under the facts of this case."); Collins v. Turner, 599 F.2d 657, 658 (5th Cir. 1979). Therefore, the Court RECOMMENDS that Ground Two be DENIED.

**C.    Ground Three: Denial of Access to HPA Records**

In Ground Three of his Petition, Wideman contends that he was improperly denied access to HPA's chronological entries made to its supervision records for Wideman. Wideman claims that if he had been given access to this information, he could have shown that his parole officer was aware of his July 26, 2011 police contact and that Wideman was asked at his parole appointments whether he had any police contact.

Wideman's argument is without merit. First, the HPA was legally entitled to withhold the chronological records from

14

Wideman. See Haw. Rev. Stat. § 92F-22(1)(B) (permitting an agency that performs as a principal function any activity pertaining to the prevention, control, or reduction of crime to deny individuals access to "[r]eports prepared or compiled at any state of the process of enforcement of the criminal laws from arrest or indictment through confinement, correctional supervision, and release from supervision"). Second, HPA's denial of access to these records was not prejudicial to Wideman. Wideman was charged with three parole violations for failing to immediately report three separate police contacts. The chronological records would only possibly mitigate one out of the three violations. See Resp. App. D, PageID # 124 ("Your evidence as to Violations #1 and #2 was that you . . . forgot or overlooked your requirement to report the two police interviews to your PO. Your evidence as to Violation #3 was that your PO already knew you were going to have police contact."). Further, Wideman has failed to show how being asked at his parole appointments about police contact was relevant to his defense. Accordingly, the Court FINDS that Wideman was not improperly denied access to HPA's chronological records and RECOMMENDS that Ground Three be DENIED.

**D. Grounds Five and Six: Improper Evidence and Impartiality of Prosecutor at Revocation Hearing**

In Grounds Five and Six, Wideman asserts due process violations at his parole revocation hearing. The minimum requirements of due process include

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey, 408 U.S. at 489.

In Ground Five, Wideman contends that the HPA "used false, erroneous and misleading evidence for findings of guilty" at his parole revocation hearing. Petition, PageID # 12. Specifically, Wideman points to statements contained in his notices regarding his pre-revocation hearing and revocation hearing rights in which the alleged violations are outlined and the supporting evidence for said violations is provided. Wideman claims that he was not given the opportunity to confront the witnesses upon which the alleged violations were based. The record, however, indicates that Wideman and his attorney "fought [his] charged violations by requiring the parole officers to put on their evidence, and also established our evidence (through [Wideman's] testimony)." Resp. App. D, PageID # 124. There is

16

no indication that Wideman was denied the ability to present his evidence or to cross-examine adverse witnesses.

In Ground Six, Wideman argues that Kevin Rego, Wideman's former parole officer, acted as prosecutor at Wideman's revocation hearing and that this participation somehow created a conflict of interest. Although Wideman is entitled to a "neutral and detached" parole board, the board is given a presumption of honesty and integrity. Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995). Wideman has not shown that the HPA was actually biased or had the appearance of partiality from Mr. Rego's participation as prosecutor that might violate due process. Id. Therefore, the Court FINDS that Grounds Five and Six lack merit and RECOMMENDS that they be DENIED.

**E.  Ground Eight: Ineffective Assistance of Counsel**

In Ground Eight, Wideman contends that he was ineffectively represented by his counsel throughout the parole revocation process. The Supreme Court explained the legal standard for assessing a claim of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 685-87 (1984). The Strickland test contains two prongs:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that

17

> counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose
> result is reliable. Unless a defendant makes
> both showings, it cannot be said that the
> conviction . . . resulted from a breakdown in
> the adversary process that renders the result
> unreliable.

Id. at 687. Under this test, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

Wideman fails to point to any particular serious error that his counsel made during his parole revocation process. Instead, Wideman asks the court to "incorporate the entire record" to find that he was ineffectively represented. As such, Wideman fails to meet his burden to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. Indeed, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). See also Wacht v. Cardwell, 604 F.2d 1245, 1247 n.2 (9th Cir. 1979) ("Bald assertions and conclusory allegations . . . do not support [a habeas petition], nor do they afford sufficient grounds for an evidentiary hearing."). Wideman's conclusory allegations that his counsel provided ineffective assistance fall far short of stating a valid Sixth Amendment violation. Furthermore, in the absence of any specific

allegations of serious error, the Court sees no reason to disturb the ICA's finding that "there is nothing in the record to suggest [Wideman's] counsel was ineffective."  Resp. App. N, PageID #302. Therefore, the Court RECOMMENDS that Ground Eight be DENIED.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases, requires the district court to issue or deny a certificate of appealability ("COA"), when it enters a final order that is adverse to a petitioner challenging a state court conviction or sentence.  See also, 28 U.S.C. § 2253(c)(1).  The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a constitutional claim is rejected on its merits, "The petitioner must demonstrate that reasonable jurists would find the . . . court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  If these findings and recommendations are adopted by the district court, that decision will be on its merits for Grounds One through Eight.  This court finds that reasonable jurists would not find the denial of Grounds One through Eight was debatable or wrong.  Accordingly, this court RECOMMENDS that a certificate of appealability be DENIED.

CONCLUSION

This court FINDS that Wideman's Petition is without merit as to Grounds One through Eight. The court RECOMMENDS that the Petition be DENIED. The court further RECOMMENDS that a certificate of appealability be DENIED.

IT IS SO FOUND AND RECOMMENDED.

DATED: HONOLULU, HAWAII, JUNE 4, 2014.



_____
Richard L. Puglisi
United States Magistrate Judge

WIDEMAN V. THOMAS, CIVIL NO. 14-00073 DKW/RLP; FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS